**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADRIANA M. CASTRO, M.D., P.A., et al. on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SANOFI PASTEUR INC.,<br><br>Defendant. | Civil Action No. 11-7178 (JLL)<br><br>OPINION |

**LINARES,** District Judge.

This matter comes before the Court by way of Defendant/counterclaimant Sanofi Pasteur Inc. ("Sanofi")'s motion for either entry of a final judgment pursuant to Fed. R. Civ. P. 54(b), or leave to file an interlocutory appeal of this Court's dismissal of its counterclaim pursuant to 28 U.S.C. § 1292(b). The Court has considered the submissions made in support of and in opposition to Sanofi's motion, and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Sanofi's motion is **denied**.

I.   BACKGROUND

As the Court writes only for the parties, and has set forth the facts of this case in two prior opinions, (*see* CM/ECF Nos. 106, 135), only the facts germane to Sanofi's motion are set forth below.

Plaintiffs are medical practices that purchase pediatric vaccines directly from Sanofi, or its wholly owned wholesale subsidiary, VaxServe, Inc. (First Consolidated Amended Complaint ("FAC") ¶¶ 2, 8-9.) Members of Plaintiffs' putative class generally make these purchases

1

pursuant to contracts negotiated by Physician Buying Groups ("PBG")s. (*See* FAC ¶¶ 3, 28, 104.) "PBGs are typically privately held, for-profit entities, with membership consisting of thousands of family practices, pediatricians, and other independent medical practices." (*Id.* ¶ 104.) Their purpose is to negotiate group prices for their members; they do not actually buy any vaccines. (*Id.*) Practices that participate in PBGs are generally required to "agree to contractual terms to be eligible to purchase vaccines and other products pursuant to the PBG group purchasing contracts." (*Id.*)

In the FAC, Plaintiffs allege that Sanofi used its market power across all relevant markets to impose bundled-pricing contracts on PBGs as a means of stifling competition from Sanofi's rivals. (*See id.* ¶¶ 105-06, 153.) Thus, under Sanofi's "exclusionary contracts with PBGs," buyers are allegedly penalized for purchasing any vaccine that Sanofi offers from one of Sanofi's competitors. (*Id.* ¶ 105.) In their FAC, Plaintiffs allege two causes of action: (1) monopolization of the meningococcal vaccine market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, and (2) anti-competitive agreements in unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

On February 27, 2012, Sanofi moved to dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(6). The Court denied this motion on August 6, 2012.

In its answer to Plaintiffs' FAC, Sanofi asserted a counterclaim under Section 1 of the Sherman Act against Plaintiffs and each opt-in member or non-opt-out member of any class that may be certified in this litigation. (*See* Counterclaim ("CC") ¶ 2.) The crux of Sanofi's counterclaim allegations is that Plaintiffs and their unnamed coconspirators "engaged in unlawful collective action through their membership in [PBGs] by demanding discounts that depressed the price of the relevant vaccines, causing prices to fall below competitive levels."

2

(CC ¶ 4.) According to Sanofi, Plaintiffs' business practice of joining PBGs which negotiate vaccine discounts on behalf of their members must be condemned under the *per se* rule and the "rule of reason." (CC ¶ 11.)

On December 20, 2012, this Court issued an Opinion and Order dismissing Sanofi's counterclaim pursuant to Fed. R. Civ. P. 12(b)(6). Specifically, this Court dismissed Sanofi's counterclaim with prejudice to the extent that it alleged a *per se* antitrust violation, and dismissed Sanofi's counterclaim without prejudice to the extent it alleged that PBGs unreasonably restrain trade under a "rule of reason" analysis.

On March 8, 2013, Sanofi filed the instant motion for entry of final judgment pursuant to Fed. R. Civ. P. 54(b), or leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## II. LEGAL STANDARD

28 U.S.C. § 1291 grants federal courts of appeal jurisdiction over "*final* decisions of the district courts of the United States." (emphasis added). "Generally, an order which terminates fewer than all claims pending in an action or claims against fewer than all the parties to an action does not constitute a final order for purposes of 28 U.S.C. § 1291." *Elliott v. Archdiocese of N.Y.*, 682 F.3d 213, 219 (3d Cir. 2012). This general rule is subject to exception when a district court enters a final judgment pursuant to Fed. R. Civ. P. 54(b), or grants leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b)

### A. Final Judgment Pursuant to Fed. R. Civ. P. 54(b)

Fed. R. Civ. P. 54(b) grants district courts the authority to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties *only* if the court expressly determines that there is no just reason for delay." (emphasis added). The "Supreme Court has enunciated a two-step procedure" for determining whether entry of final judgment pursuant to

Fed. R. Civ. P. 54(b) is appropriate. *See Zahl v. New Jersey Dept. of Law & Public Safety*, No. 06-3749, 2010 WL 1742101, at *4 (D.N.J. Apr. 28, 2010) (Linares, J.) (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)). First, the district court must determine whether "there is a final judgment" on a "cognizable claim for relief." *Id.* Second, if the Court finds that such a final judgment exists, it must proceed to decide "whether there is any just reason for delay[ing]" appellate review. *See Curtiss-Wright Corp.*, 446 U.S. at 8. This decision "is left to the sound judicial discretion of the district court to determine the appropriate time when each final decision in a multiple claims action is ready for appeal." *See Curtiss-Wright Corp.*, 446 U.S. at 8. In exercising its discretion, the court must balance "judicial administrative interests (preservation of the federal policy against piecemeal appeals) and equities (justice to the litigants)." *See Carter v. City of Philadelphia*, 181 F.3d 339, 346 (3d Cir. 1999).

"Rule 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel." *See Pac. Employers Ins. Co. v. Global Reinsurance Corp.*, No. 09-6055, 2010 WL 2376131, at *4 (E.D. Pa. June 9, 2010) (quoting *Panichella v. Pa. R.R. Co.*, 252 F.2d 452, 455 (3d Cir. 1958)). "[T]he burden is on the parties seeking final certification to convince the district court that the case is the infrequent harsh case meriting a favorable exercise of discretion." *See, e.g., Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1003 (3d Cir. 1992).

B. <u>Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)</u>

"In order to certify a question to the Court of Appeals, a district court must find that the following three factors are satisfied: (1) the certified order involves a controlling question of law; (2) there is substantial ground for difference of opinion with respect to that question; and (3) immediate appeal may materially advance the ultimate termination of the litigation." *See, e.g., Huber v. Howmedica Osteonics Corp.*, No. 07-2400, 2009 WL 2998160, at *1 (D.N.J. Mar. 10,

2009) (Linares, J.) (citing 28 U.S.C. § 1292(b)). "Even if all three criteria are present, the decision to certify is wholly within the district court's discretion." *Id.* (citing *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976)).

## III. DISCUSSION

The Court will now address the propriety of either (1) entering final judgment pursuant to Fed. R. Civ. P. 54(b) or (2) granting leave to appeal pursuant to 28 U.S.C. § 1292(b).

### A. Final Judgment Pursuant to Fed. R. Civ. P. 54(b)

The parties do not dispute that the dismissal of Sanofi's counterclaim amounts to a final disposition of that claim.[1] Thus, in determining whether to enter final judgment pursuant to Rule 54(b), the Court need consider only whether "there is any just reason for delay" of appellate review. *See Curtiss-Wright Corp.*, 446 U.S. at 8. The following are among the factors courts generally consider:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment to be made final; and (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expenses, and the like.

*See, e.g., Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006). In keeping with their responsibility to ensure that appeals are not raised in piecemeal fashion, courts should focus their inquiry on "whether the pending issues and those that have been dismissed are legally and factually separable." *See U.S. Golf Ass'n v. St. Andrews Sys., Data-Max, Inc.*, 749 F.2d 1028, 1031 n.5 (3d Cir. 1984).

---

[1] In spite of this Court's having dismissed Sanofi's "rule of reason" claim without prejudice, Sanofi has opted not to amend its counterclaim and rest on its pleadings.

Sanofi raises four points in connection with its motion for entry of final judgment under Rule 54(b), none of which convince this Court that entry of final judgment would be appropriate.

First, although Sanofi acknowledges that "there is some factual overlap between Plaintiffs' [pending] claims and the [dismissed] counterclaim," it argues that there is "no overlap between the claims on their core legal issues, substantively or procedurally, so the Court of Appeals should not have to address any legal issue more than once if this motion is granted." (*See* Br. in Supp. Mot. at 3.) According to Sanofi, its counterclaim and Plaintiffs' claims raise distinct legal issues because the counterclaim "alleges a horizontal buyers' conspiracy claim," and Plaintiffs' claims "involve vertical distribution agreements." (*Id.*)

Sanofi's argument is unpersuasive. Plaintiffs' claims and Sanofi's counterclaim raise such common questions as what constitutes market power within a relevant market, what amounts to anticompetitive practices, and whether the conduct alleged in the FAC and counterclaim, respectively, caused vaccine prices to depart from competitive levels. At least one of Sanofi's affirmative defenses to Plaintiffs' claims also raises an issue that overlaps with the counterclaim, namely, whether Sanofi engaged in culpable conduct. (*See* CC at 39.) To grant Sanofi leave to appeal at this stage would raise a substantial likelihood that the Third Circuit may have to revisit these questions on a future appeal after final disposition of Plaintiffs' claims before this Court.

Second, Sanofi argues that this Court should enter final judgment under Rule 54(b) because the issues for review here "cannot arise in any subsequent appeal concerning Sanofi's counterclaim, or Plaintiffs' affirmative claims" since they "concern the pleading requirements necessary to state a buyers' conspiracy claim." (Br. in Supp. Mot. at 3-4.) This argument is unavailing. Although the legal context within which the Third Circuit considers particular

issues may differ depending on the procedural posture of a case at the time of appeal, it does not follow that substantive legal and factual issues necessarily change along with a case's procedural posture. This is particularly true in this case, given Sanofi's assertion of Plaintiffs' "culpable conduct" as an affirmative defense, an issue that overlaps with the allegations in the counterclaim. (*See* CC at 39.)

Third, Sanofi urges this Court to enter final judgment under Rule 54(b) because an immediate appeal would allow the counterclaim to "be litigated on the same track as the plaintiffs' affirmative claim[s]" if this Court's "counterclaim disposition is reversed." (*See* Br. in Supp. Mot. at 5.) This argument lacks merit. If the Third Circuit were to reverse this Court's dismissal of Sanofi's counterclaim, it would not necessarily follow that the counterclaim would be reinstated. This Court reserved judgment on whether the counterclaim should be stricken as impermissible retaliation and on whether Sanofi adequately alleged a class of counterclaim defendants. Thus, even if the Third Circuit were to disagree with the grounds upon which this Court dismissed the counterclaim, it is conceivable that the counterclaim would nevertheless be stricken. In this scenario, the interlocutory appeal would have resulted in delaying the ultimate resolution of this case. Additionally, Sanofi has not requested a stay of this action pending the Third Circuit's ruling on an interlocutory appeal, and the Court does not see how Plaintiffs' claims and Sanofi's counterclaim (if it were reinstated) could be litigated on the same track without such a stay, which would also result in delaying the ultimate resolution of this case.[2]

Fourth, Sanofi maintains that "[a]n immediate appeal would materially advance the eventual termination of the litigation because it would finally resolve the extent to which the

---

[2] According to Sanofi, an interlocutory appeal would not preclude the counterclaim and Plaintiffs' claims from being litigated on the same track because, *inter alia*, "[t]he issues on appeal are . . . uncomplicated," and "[u]pon remand, there will be limited, if any, need for additional discovery." (Br. in Supp. Mot. at 7.) The Court declines to exercise its discretion to enter final judgment pursuant to Rule 54(b) based on these *ipse dixit* assertions

named plaintiffs and unnamed class members may be liable under the antitrust laws." (Br. in Supp. Mot. at 4.) According to Sanofi, the counterclaim "will linger over the case" without a final judgment, as its existence and potential consequences must be disclosed in any class notice to putative class members. Plaintiffs, on the other hand, maintain that Sanofi may not bring a "counterclaim that is implausible . . . and use that to intimidate potential class members and distort the procedure in the trial and appellate courts." (Br. in Opp'n. at 6.) At this juncture, the Court need not rule on the propriety of disclosing Sanofi's dismissed counterclaim in any class notice, or whether any such notice would be required under Fed. R. Civ. P. 23(c). It suffices to say that in the exercise of its discretion, this Court will not grant a final judgment pursuant to Rule 54(b) so that the Third Circuit may consider an interlocutory appeal raising issues that may resurface in a later appeal.

    B.    <u>Leave to Appeal Pursuant to 28 U.S.C. § 1292(b)</u>

Having determined that entry of final judgment under Rule 54(b) would be inappropriate, the Court now turns to whether it should grant leave to appeal pursuant to 28 U.S.C. § 1292(b). For the reasons stated above, Sanofi has not established that an immediate appeal would materially advance the termination of this litigation. On that basis alone, this Court would decline to grant leave to appeal under 28 U.S.C. § 1292(b) without further analysis. *See, e.g., Huber*, 2009 WL 2998160 at *1 (noting that advancing the termination of litigation is one of the three essential conditions that must be satisfied prior to granting leave to appeal under 28 U.S.C. § 1292(b)).

The Court, nevertheless, deems it prudent to touch upon Sanofi's assertion that granting leave to appeal under 28 U.S.C. § 1292(b) is appropriate because there is substantial ground for difference of opinion concerning the reasons this Court gave for dismissing the counterclaim. Although the Court will not reiterate all its reasons for dismissing the counterclaim, it bears

mentioning that many of Sanofi's arguments suggesting that reasonable minds might disagree with this Court's conclusions are largely based on inaccurate interpretations and mischaracterizations of what this Court actually held in its Opinion granting Plaintiffs' motion to dismiss the counterclaim. The Court will provide three illustrative examples.

First, contrary to Sanofi's assertion, this Court did not conclude that "joint purchasing can [never] be considered *per se* illegal . . . when competitors set prices through a common agent." (*See* Br. in Supp. Mot. at 8.) Rather, the Court held that the counterclaim failed to "allege[] facts to support the plausible inference that the PBGs either *fixed* prices or *restricted* purchases." (*See* CM/ECF No. 135 at 11, emphasis added.) For this reason, among others, the Court determined that Sanofi's claims were "subject to the rule of reason analysis." (*Id.*) The Court's holding was not based on any determination that joint purchasing through a common agent can never be *per se* illegal, as Sanofi suggests.

Second, Sanofi's assertion that this Court "held that it is legally irrelevant that the challenged conduct caused vaccine manufacturers other than Sanofi to exit the market, decline to enter it, or otherwise limit their investment into productive capabilities," (*see* Br. in Supp. Mot. at 8), is a mischaracterization of this Court's holding. In concluding that the counterclaim failed to allege anti-competitive effects, the Court held that Sanofi failed "to allege facts from which to draw a plausible inference that manufacturers exited the market *as a result of* depressed prices caused by the allegedly illegal PBGs." (CM/ECF No. 135 at 14, emphasis added.) In other words, the Court held that the counterclaim failed to set forth a factual basis to infer a plausible nexus between the challenged conduct and the anti-competitive effect, and therefore concluded that the counterclaim failed to allege an anti-competitive effect adequately.

9

Third, Sanofi's assertion that "[t]he Court held that below cost pricing was necessary" to allege direct proof of market power is inaccurate. In concluding that the counterclaim failed to allege direct proof of market power, the Court specifically held that the counterclaim lacked "specific facts supporting the plausible inference that PBGs control or depress prices *below competitive levels.*" (CM/ECF No. 135 at 16, emphasis added.) The Court noted that Sanofi had "acknowledged that contracting with PBGs can win profitable incremental business" to emphasize the point that the counterclaim was devoid of facts supporting the plausible inference that PBGs control or depress prices below competitive levels. (*See* CM/ECF No. 135 at 16.) The Court did not, however, specifically address whether prices could be driven below competitive levels while remaining above-costs.

As Sanofi has failed to establish either a substantial ground for difference of opinion or a likelihood that an interlocutory appeal would advance the termination of this litigation, the Court declines to grant leave to appeal pursuant to 28 U.S.C. § 1292(b).[3]

## IV. CONCLUSION

For the foregoing reasons, Sanofi's motion for entry of final judgment pursuant to Fed. R. Civ. P. 54(b), or leave to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), is denied. An appropriate order follows.

Dated: April 9, 2013

JOSE L. LINARES
U.S. DISTRICT JUDGE

---

[3] The Court recognizes that Sanofi disagrees with this Court's interpretation of the cases upon which it relied in concluding that Sanofi's allegations of indirect market power were inadequate. To the extent that Sanofi believes that this Court's Opinion was contrary to controlling precedent, it could have moved for reconsideration. Sanofi's mere disagreement with this Court's interpretation of case law is an insufficient basis to establish a substantial ground for difference of opinion such that leave to appeal under 28 U.S.C. § 1292(b) would be appropriate.