# COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP

COUNSELLORS AT LAW
PARK 80 WEST - PLAZA ONE ▪ 250 PEHLE AVENUE, SUITE 401 ▪ SADDLE BROOK, N.J. 07663
201-845-9600 ▪ FAX 201-845-9423

General E-mail: clphk@njlawfirm.com
Internet Address: www.njlawfirm.com

Peter S. Pearlman, Esq.
psp@njlawfirm.com
Direct Dial: 551-497-7131
Cell: 201-709-0597

October 18, 2013

**VIA ECF**
The Honorable Michael A. Hammer
United States Magistrate Judge
United States District Court for the District of New Jersey
M.L. King, Jr. Federal Building & Courthouse
50 Walnut Street
Newark, NJ 07102

      Re:    *Castro v. Sanofi Pasteur Inc.*, No. 2:11-cv-07178 (D.N.J.) (JLL) (MAH)

Dear Judge Hammer:

    We write jointly to request the Court's assistance in resolving a discovery dispute between Plaintiffs and Defendant Sanofi Pasteur Inc. ("Sanofi") regarding the deposition of Jerry Messina, Senior Director, Account Management U.S. for Sanofi. The parties dispute whether Mr. Messina should be made available for two full consecutive days upfront, or whether the parties should confer at the close of the first day to determine whether more time is necessary, and if so, how much. Unable to reach a satisfactory accommodation, the parties submit this joint letter.[1]

## I.    PLAINTIFFS' POSITION

    Because of the significance of Mr. Messina to the alleged anticompetitive scheme and the high number of likely deposition exhibits, Plaintiffs have requested a two-day deposition (14 hours) of Mr. Messina, and prefer to have certainty upfront over the total record time available in order to best effectuate an orderly and efficient deposition. Plaintiffs seek to depose Mr. Messina beyond the seven-hour default provided under Fed. R. Civ. P. 30(d)(1) because (i) he is—and has been for many years—a key decision-maker overseeing the anticompetitive conduct here; (ii) he is the author or recipient of numerous key documents, and has one of the largest custodian files of any Sanofi witness; and (iii) Sanofi's counsel's practice of instructing witnesses to take an inordinately long time to read deposition exhibits unfairly limits Plaintiffs' ability to introduce necessary deposition exhibits. Sanofi has not identified any principled grounds for its opposition to this request, even though Sanofi itself sought and received extended

---

[1] The exhibits attached to this joint letter are: Ex. 1 (Excepts from L. Moomau Tr.); Ex. 2 (Excerpts from L. McDonald Tr.); Ex. 3 (Excepts from M. Kielar Tr.); Ex. 4 (Excerpts from B. Galvan Tr.); Ex. 5 (email string re: deposition of Mr. Messina); Ex. 6 (additional excepts from M. Kielar Tr.). Unless otherwise noted, all emphasis added and internal citations and quotation marks omitted.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 2

depositions of multiple non-party witnesses for some of the same reasons presented by this application, including (a) the "complexity and importance" of this case, and (b) the need for extra time to examine "key" witnesses.[2]

There is no question that Mr. Messina is a central figure in Sanofi's anticompetitive bundling scheme. For example, in advance of Novartis's release of Menveo, Sanofi revamped its contracting strategy to add Menactra to its bundle to—in Sanofi's words—"insulate" it from competition in the marketplace. The discussions of the new strategy took place among a small group of senior Sanofi executives designated the Private Contract Task Force, or PCTF, of which Mr. Messina was a member. Additionally, a key component of Sanofi's contract strategy was its machinery for enforcing compliance with the contracts' loyalty provisions—*i.e.*, those provisions that were designed to prevent or punish "defections" to competing products. As the Senior Director of Account Management, Mr. Messina has had direct oversight over contract compliance policy, strategy, and execution. In short, Mr. Messina is precisely the kind of "key" witness for which additional deposition time is granted. *See, e.g., McBride v. Medicalodges, Inc.*, No. 06-2535-JWL-GLR, 2008 WL 1774674, at *2 (D. Kan. Apr. 16, 2008) (finding good cause to extend deposition beyond seven-hour limit established by the fact that (i) the witness "appears to be a key player, directly involved" in the discrimination claims, and (ii) but for consolidation, each of the three plaintiffs would have had the opportunity to examine the witness for a full seven hours).

An additional day is also warranted by the sheer number of highly relevant documents Mr. Messina either authored or received from employees charged with implementing the anticompetitive scheme. From Mr. Messina's files alone, Sanofi produced over 36,500 documents (spanning well over 150,000 pages -- not including the pages of any of the numerous lengthy Excel and other files that were produced natively), substantially more than most other Sanofi custodians. Moreover, Plaintiffs have identified dozens of highly relevant documents (both as to contract strategy and enforcement) for which Mr. Messina will need to be questioned. Where many documents must be introduced, it takes a lot of time to go through the mechanical and laborious process of introducing and authenticating the documents, even before moving on to ask any questions about those documents.

Finally, the concern about having sufficient time to question Mr. Messina about the numerous exhibits is heightened here given Sanofi's apparent practice of instructing its witnesses to take inordinate amounts of time reading deposition exhibits before questioning can even begin, even in those instances where Plaintiffs seek to question the witness only about a small portion of a lengthy document. For example, during the April 11, 2013 deposition of Linda Moomau, an Account Management Sales Director reporting directly to Mr. Messina, Ms. Moomau repeatedly took a long time to review documents, including taking nearly fifteen minutes on the record to review the "New Contracting for 2009" policy document (PEX 19, SP 00945373-407), only to then testify (not credibly) that she did not recognize the document. *See*

---

[2] *See* June 25, 2013 Joint Letter to Judge Hammer (dkt. no. 195) at 2, 6, 8.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 3

Moomau Dep. Tr. at 115:17-116:21 (excerpt attached as Ex. 1). When confronted with this abusive time-wasting tactic, Sanofi's counsel insisted that the witness "has a right to look at the documents before she provides testimony on them." *Id.* at 117:4-5. Sanofi's counsel has similarly instructed its other witnesses, both on and off-record, to take as much record time as possible to review documents, and has refused to allow Plaintiffs' counsel to go off the record to conserve deposition time. *See, e.g.*, McDonald Dep. Tr. at 96:10-97:2, 102:8-105:13 (excerpt attached as Ex. 2) (Sanofi counsel insisting on having deponent take as much record time as possible to review entire exhibits before any questioning and refusing to allow Plaintiffs' counsel to go off the record); Kielar Dep. Tr. at 20:17-25:21 (excerpt attached as Ex. 3) (Sanofi counsel repeatedly interrupting examination to direct witness to read and re-read self-assessment document witness had previously prepared after witness had already indicated familiarity with, and readiness to testify about, the document); Galvan Dep. Tr. at 19:10-20:1 (excerpt attached as Ex. 4) (deponent takes roughly eight minutes to re-read his 2012 Incentive Compensation Plan).[3] And the record deposition time Sanofi witnesses have used exclusively for reading is not immaterial. For example, during his July 18, 2013 deposition, Dan Casey Casey took over 1.5 hours (over 20%) of the record deposition time to read twenty-two exhibits. This stall tactic, combined with the sheer number of highly relevant documents about which Plaintiffs need to question Mr. Messina—a central figure in the challenged scheme—necessitates additional time with this witness. *See, e.g., Marshall v. GE Marshall, Inc.*, No. 2:09 cv 198, 2012 WL 405714, at *1 (N.D. Ind. Feb. 8, 2012) (finding good cause to extend deposition of plaintiff by two additional days established by the "numerous documents" produced by plaintiff in a discrimination case).

Sanofi does not challenge the cases Plaintiffs cite in support of the application. This is because Courts often grant extra time for examination precisely for the same reasons presented here – all without the exhaustion requirement Sanofi advocates is "required." Sanofi relies on *Malec v. Trustees of Boston College*, 208 F.R.D. 23 (D. Mass. 2002), for its mistaken view that "[c]ourts agree" the allotted seven hours must first be exhausted before additional time may be requested. *Malec* involved a request for a two-day examination of a straight-forward pregnancy discrimination case plaintiff, and cited no authority for its view that the "better practice" was to require exhaustion of the seven-hours before any application for additional time can be made.[4]

---

[3] Sanofi's characterization of these deposition excerpts is not support by review of the video deposition excerpts, copies of which can easily be made available to the Court upon request. Moreover, Sanofi does not even bother to challenge the excerpt related to Mr. Galvan because it is inconceivable for a sales manager to not already know the terms of his compensation. In any event, Plaintiffs are not now seeking to re-open these prior depositions, and are not now challenging the length of time Sanofi's witnesses waste reading and re-reading documents. Plaintiffs seek only an enlargement of time insofar as necessary to fairly examine Mr. Messina who, himself produced over 36,000 responsive documents (much more than most other Sanofi custodians) and authored or received dozens of highly relevant documents. The fact that Sanofi witnesses appear to need more time (than one could reasonably expect) to review documents before any questioning can commence only further supports the reasonableness of Plaintiffs' request that more time will be needed for Mr. Messina to cover the dozens of likely deposition exhibits.

[4] While exhaustion might be the better practice in a simple, straight-forward employment case, it only works to prejudice the examining party in a complex antitrust case by merely delaying the litigation of the issues after having

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 4

The only other case on this "courts agree" point cited by Sanofi, *GE v. Indemnity Ins. Co. of N.A.*, No. 3:06-CV-232 (CFD), 2006 WL 1525970 (D. Conn. May 25, 2006), cites to and relies exclusively on *Malec*. Moreover, that case involved an application made before discovery had even commenced. As a result, the applicant was in no position to make any of the requisite showing of need for the extra time. In sum, *Malec* and its progeny are not applicable here. Mr. Messina is a key witness involved in a complex anticompetitive scheme over a period of several years in which he, himself, authored numerous highly relevant documents. Under these circumstances, a 14-hour deposition is amply justified. *See, e.g.*, *Intel Corp. Microprocessor Antitrust Litig.*, MDL No. 05-1717-JJF, 2008 WL 5377979, at *1-2 (D. Del. Dec. 18, 2008) (approving 14-hour, 15-hour, and 22.5-hour depositions because each non-party witness had "particularized and distinct" knowledge of the issues over an eight-year period in which each had authored "thousands of documents").[5]

     Mistaken on the law, Sanofi resorts to challenging the manner in which Plaintiffs have conducted deposition discovery to date, arguing – as it did in its March 2013 opposition to Plaintiffs' *pro hac vice* motions – that Plaintiffs' conduct of discovery is inefficient. Naturally, Sanofi's "equities" claim that it could do a better job litigating this case than its adversary should be viewed with jaundiced skepticism. According to Sanofi, Plaintiffs should be limited in their questioning of Mr. Messina because they "wasted" time questioning Mr. Hoover (the second deposition Plaintiffs took) about the general organizational structure and operations of the vaccines business he is responsible for running. Sanofi, however, ignores Mr. Hoover's repeated testimony that he relied on various "teams" of people who are better suited to answer many of the more substantive questions posed. Likewise, Sanofi insists that Plaintiffs wasted time questioning Mr. Kielar, the executive having direct oversight over Sanofi's contract administration department, about the various terms of art and contract coding Sanofi uses in its contract documents and contract administration databases. Prior to his deposition, Plaintiffs had no way to know that Mr. Kielar did not know the very contract codes his own department uses. Once Mr. Kielar made clear he did not know the answers, Plaintiffs quickly moved on to other topics. Sanofi also complains that Plaintiffs "wasted" time asking similar repeat questions of each witness, but Plaintiffs' questioning is wholly proper in this case. Certainly, participants involved in the same anticompetitive scheme are likely to be asked similar questions and documents raising similar issues are likely to generate similar questions. Moreover, witnesses providing non-responsive, otherwise evasive, or nonsensical responses will naturally be subjected to read-backs and repeat questioning.[6] For all of these "wasted" time reasons (which, as noted above, completely mischaracterize what actually occurred) Sanofi bizarrely concludes

---

forced Plaintiffs to compromise what would otherwise be an orderly and efficient examination if the allotted deposition time were clarified from the outset.

[5] The only other case cited by Sanofi , *Alaska Elect. Pension Fund v. Pharmacia Corp.*, No. 03-1519(AET), 2006 WL 6487632 (D.N.J. Aug. 22, 2006), involved an application to enlarge the number of depositions from ten to eighty and is therefore inapposite. Under the Court's Pretrail Scheduling Order (dkt. no. 104), the parties may take as many as 30 depositions, and Plaintiffs are nowhere near that limit.

[6] Indeed, Plaintiffs must, at times, repeatedly ask the very same questions involving different documents to ensure the impeachment value of those documents – *i.e.*, that a witness's repeated testimony contradicting the plain English of numerous documents provides sufficient reason for a jury to discredit the witness's testimony.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 5

that Plaintiffs should be limited to a seven-hour deposition of Mr. Messina because Plaintiffs have completed other depositions in seven-hours without complaint.[7]  If anything, the fact that Plaintiffs have not sought additional time with other witnesses only further supports why this application should be granted.[8]  It further demonstrates Plaintiffs' judicious use of time and the legitimate need for the extra time requested here.

Finally, Sanofi opposes Plaintiffs' request that Mr. Messina be made available for two consecutive days but fails to identify any burden or prejudice that could possibly justify disruption of the deposition and the increased risk of undue rehabilitation between sittings.[9]

For the foregoing reasons, Plaintiffs respectfully request that the Court order Sanofi to make Mr. Messina available for deposition on two consecutive deposition days for a total of fourteen hours on the record.

**II.     SANOFI'S POSITION**

Plaintiffs' request to double the default length of a deposition afforded by Rule 30 should be denied because they have not shown the good cause required by the rule. Specifically, plaintiffs have not shown why seven hours of on-the-record time with Mr. Messina, on top of seven hours with his supervisor, and *seventy more (or so)* hours with his direct and indirect reports is insufficient to "fairly examine" the witness or provide a clear picture of Sanofi's account management practices.  Nor have they shown why Sanofi's offer – to confer with plaintiffs at the conclusion of Mr. Messina's day-long deposition to determine whether additional time is appropriate, and if so, how much – is unreasonable.

---

[7] To say, as Sanofi does, that "plaintiffs have never requested additional time (not even five minutes) or indicated that such time was insufficient to complete their examination" is simply false.  Sanofi strictly enforces the seven-hour limit.  The deposition of Ms. Moomau presents a good example.  Upon reaching the seven-hour limit, Sanofi sought to cut Plaintiffs examination short, permitting Plaintiffs to inquire only about one additional document (what it termed a "reasonable accommodation") when Plaintiffs' counsel made clear that at least an hour of additional deposition time should be provided because of the inordinate amount of time Ms. Moomau took to read deposition exhibits and respond to questions (not to mention her frequent habit of both refusing to understand basic English terms and repeatedly providing non-responsive and otherwise evasive answers).  *See* Moomau Dep. Tr. at 286:9-300:20 (Ex. 1).

[8] Erik Grau is the only witness Sanofi agreed to produce for a two-day examination, and did so in substantial part because Sanofi also designated him as its Fed. R. Civ. P. 30(b)(6) witnesses for several important topics.

[9] Sanofi also seemingly argues that Plaintiffs should be estopped from having more than seven-hours with Mr. Messina because Plaintiffs originally accepted only one deposition day for him.  Sanofi's position is untenable.  The simple fact is that, in preparing for Mr. Messina's deposition, it soon became apparent that Plaintiffs would need more deposition time.  Plaintiffs made the request for a 14-hour deposition as soon as practicable on September 27, well in advance of Mr. Messina's scheduled November 6 deposition.  *See* Ex. 5.  Sanofi fails to identify any consequent prejudice from the timing of this request.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 6

Courts agree that Sanofi's approach is the "better," if not "required," approach. *See Malec v. Trustees of Boston College*, 208 F.R.D. 23, 24 (D.Mass. 2002) (the "better practice" is to confer about the need for additional time after seven hours on the record); *General Elec. Co. v. Indemnity Ins. Co. of North America*, 2006 WL 1525970, *3 (D.Conn. 2006) (describing Sanofi's approach as "an exhaustion requirement" plaintiffs must satisfy).

Even were this not the default rule, a presumption that additional time is needed is unwarranted here. Mr. Messina is not in charge of contract administration, or pricing. Nor does he set strategy concerning Sanofi's contract practices. Rather, he is a mid-level manager of other mid-level managers, who in turn manage account management representatives. The issues about which he has knowledge have been thoroughly explored in prior depositions, and will be further examined during his full-day deposition, and in additional depositions plaintiffs have noticed.

### A. Plaintiffs Have Not Shown "Good Cause" For Additional Time.

Depositions are presumptively limited to one day and must be completed within seven hours. Fed. R. Civ. P. 30(d). Following decades of experience, the Rule's framers imposed this limit relatively recently – in 2000 – because "overlong depositions can result in undue costs and delays." Fed. R. Civ. P. 30, *Adv. Cmte. Note*. The rule strikes an efficient balance; seven hours is almost always ample to exhaust a witness's knowledge, and, though often grueling, is not so long as to to unduly burden a witness. *See* 8A Wright & Miller, FED. PRAC. & PROC. § 2104.1 (3d ed. 2013) ("Even without [Rule 30's] limitation, it appears that most depositions do not exceed the one-day limit").

To be sure, the Rule contemplates that in rare cases the limit may be exceeded for good cause. Fed. R. Civ. P. 30(d)(1). As the Advisory Committee explained:

> "Parties considering extending the time for a deposition—and courts asked to order an extension—might consider a variety of factors. For example, if the witness needs an interpreter … If the examination will cover events occurring over a long period of time … If the examination reveals that documents have been requested but not produced … In multi-party cases, the need for each party to examine the witness may warrant additional time … Similarly, should the lawyer for the witness want to examine the witness … [accommodating these issues] may require additional time … [or] where the examination is impeded by an 'other circumstance,' which might include a power outage, a health emergency, or other event." *Id.*, *Adv. Cmte. Note*.

Plaintiffs do not contend that any of these factors are present here. Mr. Messina does not need an interpreter; the relevant period is not particularly lengthy, since Novartis launched Menveo is the Spring of 2010; Sanofi produced Mr. Messina's documents long ago; this is not a "multi-party" case (though there are three named plaintiffs, in the depositions to date, plaintiffs have utilized one questioner on their behalf); Sanofi has only asked a few questions of a couple of its own witnesses; and no "other circumstances" could reasonably be contemplated in

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 7

advance. Most importantly, Mr. Messina is but one of many Sanofi witnesses with personal knowledge concerning Sanofi's pricing and contracting practices. In that regard, plaintiffs have already taken, or plan to take, *twenty depositions* of Sanofi witnesses. For these reasons alone, plaintiffs' request should be denied.[10]

That said, Sanofi understands that there may be other factors, not discussed by the Advisory Committee, that may justify additional on-the-record time. For witnesses with critical and unique knowledge, notwithstanding a noticing party's best efforts, the default time may need to be extended. For this reason, at plaintiffs' request, Sanofi has offered the lead day-to-day member of its pricing team, Eric Grau, for two days of examination.

But plaintiffs have not supported *this* request by pointing to any unique information, or unique responsibility, possessed by Mr. Messina. In fact, until recently, plaintiffs themselves agreed that one day was sufficient. Specifically, on July 19th, Sanofi offered to make Mr. Messina available to plaintiffs on September 26th. On July 25th, plaintiffs *accepted* this date, without objecting that one day was insufficient. When that date was cancelled to accommodate the scheduling of Novartis' witnesses, Sanofi offered to make Mr. Messina available to plaintiffs for one day (November 6th) which plaintiffs *accepted*, without objection, on September 6th.

Three weeks later, on September 27th, Sanofi completed its examination of the scheduled Novartis witnesses. This deposition established that Novartis was not foreclosed from the alleged meningococcal market. With their foreclosure story in tatters, plaintiffs felt the need to double up on cumulative testimony concerning Sanofi's alleged contract compliance efforts.

It was at this time that plaintiffs – for the first time – said they wanted two days for Mr. Messina. Ex. 5. Plaintiffs' offered no reason for going beyond Rule 30(d) presumptive limit other than their own subjective assertions that they "require" it. *Id.*

In response, Sanofi did not reject plaintiffs' request. Instead, following the procedures established by Rule 30, Sanofi told plaintiffs that it would confer with them after the first day of Me. Messina's deposition. Sanofi noted that plaintiffs would not be prejudiced, since they had acknowledged that the second day, if necessary, did not need to be consecutive to the first. *Id.*

Sanofi's offer was consistent with what courts consistently describe as "the better practice," versus plaintiffs' approach. As the district court of Massachusetts has explained, "the better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours." *Malec* 208 F.R.D. at 24; *General Elec.*, 2006 WL 1525970, *3 ("This court finds that *Malec* does outline the better procedure."). Thereafter, "if additional time is needed" counsel may "stipulate to extend the deposition for a specific additional time period" and, if that fails, "*then* Court intervention may be sought." *Id.; see also General Elec.,* 2006 WL 1525970,

---

[10] Plaintiffs contend that Sanofi has requested additional time for certain "key" witnesses, as in the June 25th Joint Letter. In that letter, Sanofi requested up to *seven* hours, not *fourteen*, from each of two central figures in this case employed by Novartis. Plaintiffs and Novartis sought to limit Sanofi to three and a half hours.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 8

*3 (to justify extension, movant "must present the court with information specific to the deposition sought to be extended" and "*specifically state* how much more time is required"). Indeed, this wait-and-see approach is not just the better practice, but is "*an exhaustion requirement*" that plaintiffs should undertake before requesting, and obtaining, more time. *Id.* at *3 ("Like the number of depositions, courts have viewed Rule 26(b)(2) as containing an exhaustion requirement with regard to moving for leave to extend a deposition."); *cf. Alaska Elec. Pension Fund v. Pharmacia Corp.*, 2006 WL 6487632, *3 (D.N.J. 2006) ("a party [must] exhaust its available depositions before seeking leave for additional depositions"). Plaintiffs do not contend that they have satisfied this requirement.

Nonetheless, plaintiffs' rejected Sanofi's offer. They offered no reason for their premature request, other than the assertion that it would help them plan an "orderly deposition." Ex. 5. But the Rule's presumptive limit of *one day* is designed to encourage the deposing party to plan an "orderly" and *efficient* deposition. If important, unexplored areas remain at the end of the day, plaintiffs may request more time. If limited and reasonable, the parties may elect to simply continue questioning at that time; set a second day for a set period of time; or agree to disagree and present more specific arguments to the Court for review.

Having rejected this approach, plaintiffs bear the burden of showing why the default rule does not apply, and why the exhaustion requirement should be suspended. They have not carried that burden.

Plaintiffs state that extra time is warranted because Mr. Messina has extensive information concerning (i) Sanofi's "revamped …. contracting strategy" as implemented by the Private Contract Task Force ("PCTF"), and (ii) of Sanofi's "contract compliance policy, strategy, and execution." *See supra*. But they do not say that Mr. Messina is the only – or even the most – knowledgeable employee on either topic. As to the first, plaintiffs concede that Mr. Messina was but one member of the PCTF. His deposition will be just one of *seven* depositions of PCTF members, as plaintiffs have taken, or will take, the depositions of Ms. McDonald, Mr. Averbeck, Mr. Ritchey, Mr. Grau, Mr. Kielar, and Mr. Casey, all of whom are PCTF members (they have also deposed Mr. Hoover, who participated in PCTF work). Obviously, plaintiffs have not been denied access to the PCTF or its considerations.

As to the second topic, plaintiffs have taken, or will take, *twenty* depositions of Sanofi employees with knowledge of Sanofi's contracting practices, including Mr. Messina's superior (Mr. Casey); his superior's superior (Mr. Hoover); his direct and indirect reports (Mr. Galvan, Ms. Moomau, Mr. Grass, Mr. Mazutis, Ms. Saywer, Ms. Dillingham, Ms. Dallaire, Mr. Leber, Mr. Parker, and Mr. Hjorth); and others involved in contract administration (Ms. McDonald and Mr. Kielar). Just focusing on Mr. Messina, his direct supervisor, and his direct and indirect reports, plaintiffs will have *eighty-four hours* of deposition time. And that total ignores the fact that other deponents examined, or to be examined, like Mr. Hoover, Mr. Kielar, Ms. McDonald, Mr. Averbeck, Mr. Ritchey, Mr. Perdue, and Mr. Grau, all have knowledge of, and provided (or may provide) testimony regarding Sanofi's contracting and account management practices. Surely Sanofi has satisfied its obligations under Rule 26 on these topics. *Cf.* Fed. R. Civ. P.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 9

26(b)(2)(C)(i) (court should limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative").

Finally, the Court should reject plaintiffs' contention that extra time is warranted because Sanofi's witnesses have taken *some* small amount of time to quickly review the voluminous documents plaintiffs have placed before them, for several reasons. *First*, regardless of the time Sanofi's witnesses have taken, all depositions to date have wrapped within seven hours, and plaintiffs have never requested additional time (not even five minutes) or indicated that such time was insufficient to complete their examination. *Second*, as even their section of this letter illustrates, plaintiffs' case is built on taking tiny snippets of longer documents out-of-context. For example, plaintiffs may point a portion of a document, but review of the remaining portions may be necessary to determine critical information about it. For example, (i) does the document relate to a PBG or a health system, which have very different benchmarks and rebate structures; (ii) if the latter, does it relate to a direct purchasing health system, or a GPO member, for which rebates are calculated differently; (iii) does it relate to a health system that is on a 3-product contract or 4-product contract; (iv) has the customer received a management exception, (v) does the document relates to PBG contract owner, or a PBG member, etc.

This context – which can only be obtained by reading the document – is necessary because the answers to plaintiffs' questions change depending on the context in which the document arose. So it is true that Sanofi's counsel has encouraged its witnesses to *familiarize* themselves with exhibits placed before them; doing so is but a modest step towards helping to ensure an honest record in this case.

In that regard, plaintiffs' "examples" of "excessive" exhibit review do not support them:

- Plaintiffs complain that Ms. Moomau took "nearly fifteen minutes on the record to review the 'New Contracting for 2009' policy document." Not only is that document thirty six pages long, but that period included the failure of counsel's Live Note feed (as the transcript discloses), which needed to be fixed. *See* Moomau Tr. at 115:17-117:5.[11]

- In the citations plaintiffs raise regarding Ms. McDonald, the transcript reveals the witness took about three minutes to review Plaintiffs' Exh. 4, a five-page email chain (McDonald Tr. at 96:10-97:2), and about four minutes to review Plaintiffs' Exh. 5, a thirty three page combined email chain and presentation document. *See* McDonald Tr. at 102:8-105:13.[12]

---

[11] These citations and time references are found in the exhibits plaintiffs have cited to and attached to their portion of this joint letter.

[12] Moreover, it obviously takes longer to review a document a witness is unfamiliar with than one it is familiar with. If plaintiffs wish to waive their right to depose witnesses on documents they have not seen, they can state that fact at the outset. Otherwise, they should permit the witness to review the document.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 10

- Mr. Casey's deposition included examination on twenty two exhibits totaling 165 pages; the fact that more than an hour was needed to review that many pages is hardly surprising (plaintiffs still finished in under seven hours).

- The cited portion of Mr. Kielar's transcript reveals that plaintiffs' counsel handed Mr. Kielar a four page single-spaced document and immediately began questioning him about it. When Mr. Kielar expressed confusion as to whether the document was in the form he was familiar with, plaintiffs' counsel demanded that he nonetheless authenticate it, without affording him or his counsel the courtesy of a few moments to review it. Kielar Tr. at 20:17-25:21.

Even if the time Sanofi's witnesses have taken to familiarize themselves with exhibits on which they testifying *under oath* were unreasonable, the solution would not be to provide more time to examine Mr. Messina. Indeed, Rule 30's framers contemplated just such a scenario. As the Committee explained:

> In cases in which the witness will be questioned about numerous or lengthy documents*,* it is often desirable for the interrogating party ***to send copies of the documents to the witness sufficiently in advance of the deposition*** so that the witness can become familiar with them. Should the witness nevertheless not read the documents in advance, thereby prolonging the deposition, a court could consider that a reason for extending the time limit.

Fed. R. Civ. P. 30, *Adv. Cmte. Note.* Indeed, Sanofi expressly proposed this solution to plaintiffs at the very first deposition (of Ms. McDonald), which plaintiffs' counsel declined. McDonald Tr. 105:6-9.

In sum, Plaintiffs have not shown good cause to extend Mr. Messina's deposition *in advance*. Their motion should be denied.

### B. Plaintiffs Have Not Earned An Exception To The Default Rules.

Though plaintiffs' motion should be rejected on the merits, it should also be rejected on the equities. Plaintiffs have wasted significant amounts of time in their prior depositions of Sanofi's managers and executives on minutia the witness could not possibly be expected to know, or by asking the same questions over and over again to each of Sanofi's witnesses.

In particular, the Court should carefully consider plaintiffs contention that they "have identified dozens of highly relevant documents" on which they would like to question Mr. Messina. Presumably, the felt the same way about the documents they selected for use during the examination of Chad Hoover. Mr. Hoover is Sanofi's Chief Commercial Officer and, for purposes of this case, "the boss" (the pricing, contracting, and account management teams responsible for the policies plaintiffs are challenging all report to him). Yet, at Mr. Hoover's deposition, plaintiffs introduced ***ten exhibits*** containing ***organizational charts***, and spent almost

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 11

*two hours*, and over 130 pages of transcript, questioning Mr. Hoover about them. Mr. Hoover repeatedly stated that he was not the best person to answer these questions, given his responsibilities and day-to-day interactions. *See* Hoover Tr. 76:18-77:11 ("the HR group I would think would be able to pull the most up-to-date organizational chart"). Notably, Sanofi had *already produced* organization charts and responded to interrogatories setting forth its operational structure. Though plaintiffs failed to use their time appropriately, they completed their examination well within seven hours.[13]

The Court should also scrutinize plaintiffs' contention that they need additional time with Mr. Messina because he is a "central figure" in the issues in this case, in light of their examination of the next most senior executive they deposed, Michael Kielar. Mr. Kielar is the senior director of Sanofi's commercial operations, with responsibilities that include oversight over the private contract management team, *i.e.,* the team that manages the very contracts plaintiffs contend are unlawful. Plaintiffs devoted large swaths of their time questioning Mr. Kielar about the meaning of various contract *codes*, spreadsheet column headings, and acronyms – information Sanofi has long been providing to plaintiffs on a *voluntary and informal* basis. Mr. Kielar, however, is not responsible for database management, IT, or the like, as quickly became apparent (to be clear, this case has nothing to do with Mr. Kielar's knowledge, or lack thereof, of internal contract codes). *See, e.g.,* Kieler Tr. 123-125; 169-176 (excerpts attached as Ex. 6). Again, notwithstanding the time wasted, plaintiffs completed this examination in seven hours, without requesting more time.

It is also plaintiffs' habit to dedicate significant time to asking the same questions over and over, hoping to get different answers that might be more consistent with their misguided case themes. *See, e.g.,* Kielar Tr. 30:3-6 ("Q. In other words, if the performance target of the contract is not met, then the PBG agent, in this case, would not get their administrative fee?"); *id.* at 32:2-4 ("Q. In the case of a PBG, if they don't meet these benchmarks, they don't get the administrative fee?"); *id.* at 32:18-21 ("Q. But under the terms of the PBG agent contract, if the performance criteria are not met, the PBG would not be entitled to administrative fees. Isn't that accurate?"); *id.* at 35:14-16 ("Q. So, if a PBG did not meet its benchmark under the terms of the contract, it would not be paid its administrative fee?"); *id.* at 237:23-238:4 ("Q. When a PBG agent falls short of a benchmark requirement and the reason for that is because its membership purchased competitive product that forced the purchase below, the aggregate purchases below the benchmark, you would say that that PBG agent should not be paid its administrative fee; would you not?"); *id.* at 62:11-14 ("Q. So, if the group level didn't meet its performance benchmarks, one of the potential consequences is that they would not get the benefit of that portfolio pricing going forward?"); *id.* at 63:7-10 ("Q. And one of the potential consequences is that they could be not offered a renewed contract and not get the portfolio pricing that they had gotten previously?"); *id.* at 151:6-10 ("Q. Is it the reality that if a PBG agent fails to meet

---

[13] Rather than clog the record with these 130 pages, Sanofi respectfully requests that the Court ask Sanofi for these excerpts if desired, at which time they will immediately be supplied. Sanofi also notes that the extensive transcript citations noted below are, of course, available immediately to the Court upon request.

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 12

performance benchmarks for each of the products, the performance products, that they're going to lose the preferential pricing for each of those products?"); *id.* at 144:14-20 ("Q. When a PBG fails to meet one of its performance benchmarks, apart from circumstances you described where there might be a shortage or some other market condition explaining the shortfall in which Sanofi would excuse the nonperformance, what are the other potential consequences to the PBG contract?"); *id.* at 146:12-16 ("In the context of a PBG agent contract, if the reason why there was a shortfall in the Meninge product category was because members in the aggregate were purchasing Menveo as opposed to Menactra, what would be the consequence?").

*See also* Galvan Tr. at 171:4-7 ("Q. By the -- by the terms of the contract, if the benchmark requirements are not met, there is a risk the PBG owner may not be paid their administrative fees."); *id.* at 182:13-18. ("Q. Let me step back a second and ask it differently. One of the potential consequences of a PBG agent failing to meet the benchmarks of their PBG agent contract is they would lose the administrative fees?"); *id.* at 190:3-4 ("Q. And if they don't make it, they might lose the administrative fee?"); *id.* at 171:20-24 ("Q. And isn't it true that if benchmark requirements are not met with respect to one of the vaccines in the PBG agent contract, the pricing -- contract pricing for the other products in the PBG agent contract may be put at risk?"); *id.* at 172:6-8 ("But by the terms of the contract, they could stand to lose the contract pricing on the other vaccines subject to the contract").

*See also* Averbeck Tr. at 82:18-24 ("Q. If a PBG membership in the aggregate were to miss the benchmarks on the Menactra pricing of their PBG agent contract, they would lose the contract price -- or they would risk losing the contract price on the other products of the PBG agent contract?"); *id.* at 85:15-18 ("Q. So if in a PBG agent contract a benchmark is not met, would there be a risk of a different point of sale price for the products under that contract?"); *id.* at 138:17-20 ("Q. And in the aggregate, if the PBG members were to buy non-Sanofi products, they would put at risk the pricing of the products in the PBG agent contract, right?"); *id.* at 139:14-18 ("Q. In a PBG agent contract, if the benchmark for one of the products is not met, would you agree with me that the PBG agent contract pricing for the other products would be at risk?"); *id.* at 208:10-17 ("Q. What I'm trying to get at is when the PBG membership is in compliance with the benchmark they get one price at the point of sale and when the PBG membership is not in compliance that one price they would have otherwise received may be at risk for any PBG member or the membership at large?").

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
COUNSELLORS AT LAW

October 18, 2012
Page 13

      As all of the above demonstrates, there is no need to provide an advance ruling waiving the requirements of Rule 30(d).  Accordingly, plaintiffs should endeavor in good faith to complete their examination within seven hours, and confer with Sanofi at the conclusion of the deposition if they feel that additional time is necessary to "fairly examine" the witness.

Dated:  October 17, 2013

Respectfully submitted,

*/s/ Ryan P. Blaney*
Ryan P. Blaney
PROSKAUER ROSE LLP
1001 Pennsylvania Ave., N.W.
Washington, DC 20004
T: (202) 416-5844
F: (202) 416-6900
E: rblaneyy@proskauer.com

*Attorney for Defendant-Counterclaim Plaintiff Sanofi Pasteur Inc.*

*/s/ Peter S. Pearlman*
Peter S. Pearlman
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF, LLP
Park 80 Plaza West-One
250 Pehle Ave., Suite 401
Saddle Brook, NJ 07663
T: 201-845-9600
F: 201-845-9423
E: psp@njlawfirm.com

*Attorney for Plaintiffs-Counterclaim Defendants*