Proskauer Rose LLP   One Newark Center   Newark, NJ 07102-5211

Wanda L. Ellert
Senior Counsel
d 973.274.3285
f 973.274.3299
wellert@proskauer.com
www.proskauer.com

September 2, 2015

*Via ECF*

Hon. Madeline Cox Arleo
Martin Luther King, Jr. Federal Building & U.S. Courthouse
U.S. District Court of New Jersey
50 Walnut Street
Newark, New Jersey 07101

Re:   *Castro v. Sanofi Pasteur Inc.*, 2:11-cv-07178 (MCA) (MAH)

Dear Judge Arleo:

We write in response to plaintiffs' August 28th letter regarding the recently released decision in *In re Mushrooms* ("Op."). We agree that review of the decision is worth the Court's time, albeit for different reasons.

In taking stock of Professor Elhauge's econometric work in that case, the *Mushrooms* court observed that he undertook certain "fundamental tasks." Op. at 12. The first was to construct a "benchmark" in order to provide "an evidentiary foundation for inferring what the prices would have been in the conduct period but for the alleged illegal activity." *Id.* at 12, 15 (quoting authorities). There was no dispute that identifying a benchmark "to help isolate the impact of anticompetitive conduct on prices" was "a reliable methodology." *Id.* at 16. The Court found that various assumptions in Elhauge's model were "sufficiently grounded in fact" such that his benchmarks were appropriate. *Id.* at 24.

Here, of course, Elhauge did not use a benchmark (or any control-group methodology). Instead, he employed a price war simulation, called the Bertrand model. Such a simulation has never been judicially approved in any antitrust case to show causation, impact, or damages; has never been empirically shown to accurately predict prices in any two-player market; and has not been calibrated (or otherwise validated) using actual world data in this case. To the contrary, Elhauge's price war simulation makes the unrealistic prediction that Novartis would enter the market by selling below cost. This is not how firms operate in the real world. As will be explained at the *Daubert* hearing, driving Elhauge's predictions are a host of unrealistic assumptions, the most important of which is that Sanofi and Novartis cannot engage in coordinated interaction as normal duopolists do. In making that assumption, however, Elhauge was unaware of the wealth of evidence of actual world coordination, and made no adjustment to his model in light of it. ECF 338 at 21-24; ECF 360 at 13-14. *Mushrooms* makes clear that such an approach does not pass muster. Op. at 13 ("reliability must 'extend to each step in an expert's



Page 2

analysis all the way through to the step that connects the work of the expert to the particular case") (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3rd Cir. 1994)).[1]

The second "fundamental task" Elhauge conducted in *Mushrooms* "was to determine what market factors affect mushroom prices and create control variables for these factors." Op. at 12, 24. While the defendants nominated one variable or another as missing, they did not show "how failing to account for [them] rendered" Elhauge's regression "so incomplete as to be irrelevant." *Id.* at 26. Nor did they provide "an alternative … variable that might 'weaken the results of [Elhauge's] analysis.'" *Id.* Here, however, Sanofi has not only provided the missing variable in Elhauge's Menveo Share Regressions, its expert has run a regression – using Elhauge's own falsification test – and shown that the failure to control for preferences renders the regressions biased and unreliable or, in the words of *Mushrooms*, "incomplete" and "irrelevant." Op. at 26.

Finally, *Mushrooms* also bears on the issue of Elhauge's list price reduction assumption. There, as here, Elhauge performed an analysis (there a benchmark, here a simulation) "not to demonstrate impact on each individual class member for purposes of common impact analysis on class certification" but rather "to show anticompetitive conduct on the market" as a whole. Op. 33-35. In *Mushrooms*, however, Elhauge did "not rest on his unitary overcharge model in reaching the conclusion of injury to all or nearly all putative class plaintiffs." *Id.* Instead, he ran "individual regressions for each putative class member" to establish individual impact. *Id*. Here, in contrast, Elhauge simply translates his unitary simulated overcharge to individual class member injury by assuming that Sanofi would slash its list prices, rather than increase any of its discounts, in response to Menveo entry in the but for world. That is a tautological assumption that does not satisfy *Daubert*'s reliability standards.

---

[1] Plaintiffs' letter misstates the standard when it implies that "courts should not resolve factual disputes" *at all* when "performing *Daubert* analysis." P. Ltr. at 2. As *Mushrooms* shows, the expert must first establish that his opinions are "sufficiently" grounded in fact before the court will allow dueling views of the facts to go to the factfinder. *See* Op. at 14; *Elcock v. Kmart Corp.*, 233 F.3d 734, 755 n.13 (3rd Cir. 2000) ("expert who renders an opinion about a plaintiff's future economic harm based on economic assumptions not present in the plaintiff's case cannot be said to 'assist the trier of fact,' as Rule 702 requires. This type of an opinion misleads the fact-finder and arguably does not comply with the 'fit' requirement of that Rule."); *In re Intel Corp. Microprocessor Antitrust Litig.*, 2010 WL 8591815, at *16 (D. Del. 2010) (granting *Daubert* motion supported by Mr. Kaplan (Sanofi's class expert) "precisely because [plaintiffs' expert] has not demonstrated a factual foundation for his opinions"); *Benjamin v. Peter's Farm Condominium Owners Ass'n.*, 820 F.2d 640, 642 (3rd Cir. 1983) (expert testimony requires "the proper factual foundation"); *Meadows v. Anchor Longwall and Rebuild, Inc.*, 2007 WL 1300773, at *5 (W.D. Pa. 2007) ("expert testimony based on assumptions lacking factual foundation in the record is properly excluded").

Plaintiffs also misrepresent the holding in *Mushrooms* by implying that it "recogniz[ed] the admissibility of 'imperfect' econometric models so long as they are sufficiently grounded in record facts or data." P. Ltr. at 2. *Mushrooms* did not address imperfect models. The full quote relates to situations where "the data relied on by the expert is imperfect …" Op. at 28. The *Mushrooms* defendants did not challenge the applicability of Elhauge's benchmark or regression models but rather Elhauge's "factual assumptions" in choosing which data sets to input into his models. Op. at 16-19, 27-28. In contrast, Sanofi challenges Elhauge's Bertrand model itself as unreliable. As noted above, and as will be shown at the hearing, the use of Bertrand in this context is not only imperfect but unprecedented, unrealistic, and unreliable.

**Proskauer**

Page 3

                                                Respectfully submitted,

                                                /s/_____
                                                Wanda L. Ellert and Colin R. Kass