UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Not for Publication**

ADRIANA M. CASTRO, ET AL,

*Plaintiffs,*

v.

SANOFI PASTEUR, INC.,

*Defendant.*

Civil Action No. 11-7178

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This matter comes before the Court on the motion of Plaintiffs Adriana M. Castro, M.D., P.A.; Sugartown Pediatrics, LLC; and Marquez and Bengochea, M.D., P.A., on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") for approval of the class notice dissemination plan ("Notice Plan") and the proposed short and long forms of class notice ("Class Notice") pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), to compel production of updated class member information, and to limit the class period.[1] Sanofi Pasteur, Incorporated ("Sanofi" or "Defendant") opposes certain aspects of the motion. The Court has considered the submissions in support of and in opposition to the motion and decides the matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Civil Rule 78.1. For the reasons stated below, the Court grants in part and denies in part Plaintiffs' motion.

---

[1] Plaintiffs' Brief in support of its Motion will be referred to hereinafter as "Pl. Br." (D.E. 435), Defendant's Opposition to Plaintiff's brief will be referred to hereinafter as "Def. Opp'n." (D.E. 448), and Plaintiffs' Reply Brief in support of its Motion will be referred to hereinafter as "Pl. R.Br." (D.E. 459).

## I. BACKGROUND

### A. **Factual Background**

In this class action, Plaintiffs alleged that Sanofi engaged in anti-competitive behavior in violation of the Sherman Act. This case centers around the sale of pediatric vaccines in the United States, and the impact of a particular immunization, the meningococcal vaccine.[2] Am. Compl. ¶¶ 1-3. Sanofi's meningococcal vaccine is Menactra. *Id.* ¶ 2. Plaintiffs are medical practices who purchase pediatric vaccines, including Menactra, from Sanofi and its subsidiary VaxServe, Inc. *Id.* ¶¶ 8-9. In the private sector, physicians and hospitals purchase vaccines directly from manufacturers or from wholesalers of those manufacturers. *Id.* ¶ 28. In turn, most physicians and hospitals purchase their vaccines pursuant to contracts negotiated by Physician Buyer Groups (PBGs).[3]

Plaintiffs allege that Sanofi engaged in an anticompetitive scheme to maintain its monopoly power in the market, which resulted in reduced competition and artificially inflated prices for pediatric meningitis vaccines. *Id.* ¶ 7. Therefore, Plaintiffs assert that they, and other similarly situated class members, have been injured by the higher prices they paid on pediatric meningococcal vaccines. *Id.* ¶¶ 140, 141.

In January 2005, the FDA granted Sanofi a license to sell a meningococcal conjugate vaccine ("MCV4") under the brand name Menactra. *Id.* ¶ 38. This was the first vaccine of its kind

---

[2] Meningococcal vaccines inoculate against bacterial meningitis. *Id.* ¶ 2.

[3] PBGs consist of thousands of family practices, pediatricians and other independent medical practices. *Id.* ¶ 104. PBGs do not actually purchase vaccines. *Id.* Instead, they "perform various services on behalf of their members, including coordinating and aggregating member purchases of vaccines and other healthcare supplies through group purchasing contracts with major vaccine manufacturers." *Id.*

2

sold in the United States. *Id.* From 2005 to February 2010, Sanofi had 100% of the market for pediatric meningococcal vaccines because no other company had FDA approval. *Id.* ¶ 52. In February 2010, the FDA approved Novartis's MCV4, Menveo,[4] for sale in the United States. *Id.* ¶ 42. After Novartis entered the market, Sanofi's share dropped, although it never fell below eighty percent (80%). *Id.* ¶ 52.

Plaintiffs' assert that Sanofi has monopoly power in the relevant market. *Id.* ¶¶ 53, 63, 73, 83, 93.[5] Plaintiffs' central claim is that in response to the introduction of Menveo, Defendant extended its monopoly power in the meningococcal vaccine market through the use of bundling, an anticompetitive and exclusionary contracting scheme. *Id.* ¶¶ 3, 103. Due to Sanofi's market monopoly, it was able to market a bundle of products through its contracts with PBGs. *Id.* ¶ 118. These bundle-pricing contracts allegedly "penalize [] purchasers for buying vaccines from rivals." *Id.* ¶ 103. The punishments occur in the form of penalties that force purchasers to pay a substantially increased price on all of Defendant's vaccines if they choose to purchase a single vaccine from a competitor. *Id.* ¶ 109. Initially, these bundling contracts required purchasers to buy 90% or more of their pediatric vaccines from Sanofi or "be forced to pay prices 25-35% higher on *all* of the vaccines in Sanofi's pediatric vaccine bundle." *Id.* ¶ 106. However, in 2010, as a response to Novartis's release of Menveo, Defendant altered many of the bundling contracts by increasing the pediatric vaccine purchasing requirement from 90% to 100%. *Id.* ¶ 107.

Plaintiffs claim that since Novartis did not produce any pediatric vaccine other than Menveo, Novartis was unable to counter Sanofi's bundling scheme, forcing Plaintiffs to pay

---

[4] Plaintiffs allege that although Sanofi's Menactra and Novartis's Menveo are similar vaccines that inoculate against the same bacterial meningococcal serogroups. *Id.* ¶ 42.

[5] Plaintiffs assert that there are potentially five product markets relevant to their claim and that Sanofi has monopoly power in each one. *Id.*

3

inflated prices. *Id.* ¶ 128. In other words, the "effect of Sanofi's exclusionary bundle and anticompetitive contracting scheme was that Plaintiffs and members of the proposed [c]lass have paid artificially inflated prices for meningococcal vaccines." *Id.* ¶ 140.

## B. Procedural Background

On December 9, 2011, Plaintiffs filed their initial Complaint. Subsequently, Plaintiffs filed their First Consolidated Amended Class Action Complaint on January 20, 2012. D.E. 28. Plaintiff's Amended Complaint is comprised of two counts alleging violations of the Sherman Act: Count I – Monopolization of the Meningococcal Vaccine Market in contravention of 15 U.S.C. § 2, and Count II – Anti-Competitive Agreements in Unreasonable Restraint of Trade in violation of 15 U.S.C. § 1. Defendant filed a motion to dismiss on August 6, 2012, which was subsequently denied. D.E. 106, 107. Defendant then filed a counterclaim, without an answer, against "the Class Representatives and each opt-in member or non-opt-out member of any class that may be certified in this action." D.E. 54 ¶ 2. Essentially, Defendant accused Plaintiffs of engaging in anti-competitive behavior through the PBGs. The Court dismissed Defendant's counterclaim on procedural grounds. D.E. 100. Defendant responded by refiling the counterclaim along with an answer. D.E. 111. On December 20, 2012, the Court once again dismissed Sanofi's counterclaim, this time on the merits. D.E. 135, 136. As to Sanofi's counterclaim that Plaintiffs engaged in a *per se* antitrust violation, the count was dismissed with prejudice. As to the counterclaim concerning an antitrust violation based on a "rule of reason" analysis, the claim was denied without prejudice because it was not plausibly pled. Sanofi did not attempt to amend the counterclaim to satisfy the plausibility requirement. Instead, Sanofi sought the entry of a final judgment or for leave to file an interlocutory appeal, both of which the Court denied. D.E. 169, 170.

4

On September 30, 2015, the Court granted Plaintiffs' motion for class certification and denied Sanofi's motion to exclude Plaintiffs' expert economist. D.E. 415, 416. The parties then exchanged drafts of proposed class notice but could not come to an agreement on the content. *See* Pl. Br. at 6-7. Therefore, Plaintiffs filed the instant motion on April 13, 2016, outlining their proposed class notice and requesting a class end date of December 31, 2015, as well as asking the Court to compel Sanofi to update its production of transactional data through that date. *Id.* Defendant opposes this motion in part. Def. Opp'n. Defendant seeks the addition of certain language in the class notice, requests a class period end date of December 31, 2013 and opposes Plaintiffs' request for class member information beyond that date. *Id.* at 28-30.

## II. **DISCUSSION**

### A. **Adequacy of Plaintiffs' Notice Plan**

Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure governs class notice for classes certified pursuant to subsection (b)(3). The rule provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances." The best notice practicable includes "individual notice to all members who can be identified through reasonable effort." *Alberton v. Commonwealth Land Title Ins. Co.*, No. 06-3755, 2010 WL 1049581, at *3 (E.D. Pa. Mar. 17, 2010). Due process also requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Plaintiffs propose a Notice Plan made in conjunction with Rust, an experienced class-action consultation firm. Pl. Br. at 7. Plaintiffs Notice Plan would provide notice to approximately 26,000 potential class members and includes (1) direct mailing of the long form notice; (2)

publishing the short form notice in the medical journal *Pediatrics*; (3) developing and maintaining a litigation specific website; and (4) establishing a litigation specific toll-free telephone number. *Id.* at 7-8. Defendant does not object to Plaintiff's Notice Plan. Def. Opp'n at 1.

"[F]irst-class mail and publication regularly have been deemed adequate under the ... notice requirements ... of Rule 23(c)(2)." *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 91 (3d Cir. 1985). Plaintiffs have hired an established class-action consulting firm and set forth a detailed Notice Plan that includes both direct mailing via first class mail and publication. Pl. Br. at 10-11. Therefore, the proposed Notice Plan satisfies Rule 23's requirements for method of distribution and it is approved.

## B. Adequacy of Plaintiffs' Proposed Class Notice

Rule 23(c)(2)(B) requires the following:

> notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

In addition to being clear and concise, class notice must be neutral and avoid endorsing the merits of the claim. *See Hoffman La-Roche v. Sperling*, 493 U.S. 165, 173 (1989) ("In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality."); *Korrow v. Aaron's Inc.*, No. 10-6317, 2015 WL 7720491, at *9 (D.N.J. Nov. 30, 2015) (same); *see also In re Deepwater Horizon*, 739 F.3d 790, 819 (5th Cir.) ("[C]lass notice must describe the proceedings in objective, neutral terms.") (internal quotation marks omitted).

The Court finds that Plaintiffs have largely met the requirements of Rule 23(c)(2)(B). The Class Notice sets forth the basic components of the class, including the existence of the class action, the requirements for opting out, and the effects of a final judgment. *See* Pl. Br. Ex. 2 ("Pl. Short Form") & Ex. 3 ("Pl. Long Form"). Defendant raises numerous issues with Plaintiffs' proposed Class Notice. *See* Def. Opp'n. Overall, there are three main areas in which the parties disagree as to the content of the notice, which can broadly be described as (1) Defendant's theory of the case; (2) Defendant's Counterclaim; and (3) the appeals process. The Court will address each category in turn.

1. Defendant's theory of the case

The first disagreement relates to one of Defendant's proposed theories of the case – that the lawsuit grew out of a conspiracy between Novartis and Plaintiffs' counsel. Def. Opp'n at 4. Defendant argues that this theory should be included in the notice since class members are entitled to a "description of the nature of the defenses in the case." *Id.* at 3. Since the Novartis conspiracy "directly bears on whether Novartis's testimony on this subject is credible," Sanofi requests that this Court include this defense. *Id.* at 14. Plaintiffs oppose Defendant's inclusion of this theory on the basis that is has "no bearing whatsoever on whether Sanofi's conduct was illegal, and [is] irrelevant to any claim or defenses in this case." Pl. Br. at 19. Additionally, Plaintiffs argue that Sanofi's language is intended to be inflammatory in nature and therefore is not a neutral statement of the case. *Id.* at 18-19.

This language discrepancy appears in both the proposed short and long form notice. In the short form notice, Plaintiffs propose the following:

> Sanofi denies these allegations. It asserts that its contracts and conduct benefitted Class members in the form of lower prices for MCV4 Vaccines. It asserts that Novartis's entry was not foreclosed, but was in fact successful, and that Novartis was both profitable and

7

>a viable competitor to Sanofi for MCV4 vaccines. Sanofi also denies that Sanofi and Novartis would each have lowered their prices absent Sanofi's contracts and conduct.

Pl. Short Form at 1. Defendant's counter-proposal is as follows[6]:

>Sanofi denies the allegations. It asserts that this lawsuit grew out of a conspiracy between Novartis and plaintiffs' counsel to prevent price competition from Sanofi (for Novartis's benefit) and to reap large attorney's fees (for class counsel's benefit), and to use the court system to bring a baseless and unsubstantiated claim. Sanofi also asserts that its conduct, including its discounting practices, is procompetitive. Sanofi also denies that Novartis was foreclosed from the market. Finally, Sanofi denies that Plaintiffs' claim – that Novartis would have initiated a price war but for Sanofi's discounts – has any factual or legal merit.

Def. Short Form at 1.

In the proposed long form notice, the disputed language appears in "Section 2: What is this lawsuit about?" In Section 2, Plaintiffs propose the following:

>Sanofi denies the allegations. Sanofi asserts that Sanofi's conduct, including its discounting practices, benefits purchasers of MCV4 Vaccines and consumers more generally, that it did not engage in any illegal conduct, that its actions did not raise prices to noncompetitive levels, and that any alleged anticompetitive effects from its conduct are outweighed by the conduct's procompetitive effects. Sanofi also denies that Novartis's entry was foreclosed and that Sanofi and Novartis would each have lowered their prices absent Sanofi's contracts and conduct.

Pl. Long Form at 3.[7] Defendant, alternatively, proposes the following:

>Sanofi denies the allegations. It asserts that this lawsuit grew out of a conspiracy between Novartis and plaintiffs' counsel to prevent

---

[6] Defendant's Long Form Notice will be referred to hereinafter as "Def. Long Form" (D.E. 449, Ex. 1). Defendant's Short Form Notice will be referred to hereinafter as "Def. Short Form" (D.E. 449, Ex. 3).

[7] The Court notes that the issue of whether or not Sanofi was "discounting" is a factual issue to be determined at trial. However, since Plaintiffs agreed to this language the Court will leave in the reference to Sanofi's discounting practices in this section of the notice.

8

> price competition from Sanofi (for Novartis's benefit) and to reap large attorney's fees (for class counsel's benefit), and to use the court system to bring a baseless and unsubstantiated claim. Sanofi specifically alleges that at least one of the attorneys appointed as "Co-Lead Counsel" was involved in this activity. Sanofi also asserts that its discounting practices lower prices and provide substantial consumer benefits that outweigh any potential anticompetitive effect. Sanofi also denies that Novartis was foreclosed from the market. Rather, Sanofi asserts that Novartis was highly successful given its status as a late-to-market, me-too product with serious drawbacks including the need for reconstitution, a limited age indication (during most of the relevant period), and a defective stopper (at time of launch). Finally, Sanofi denies (on both factual and legal grounds) any contention that Novartis would have initiated a price war but for Sanofi's discounts.

Def. Long Form at 4.

The Court finds that Plaintiffs' language is a sufficiently clear, concise and neutral statement of the case, therefore it satisfies Rule 23(c)(2)(B) and it is approved. The Court rejects Defendant's language for numerous reasons. Most importantly, Defendant's language is not a neutral statement of the case as is required in the context of class notice. *See In re Farmers Grp. Stock Options Litig.*, No. 88-4994, 1991 WL 332500, at *4 (E.D. Pa. Dec. 19, 1991) ("[Class Notice] must [] be neutral in its description of class member options."). Instead it is an advocacy piece written in an inflammatory manner, such as accusing opposing counsel of engaging in improper conduct. Plaintiffs proposed language captures the essence of Defendant's position but does so in a neutral manner. *See* Fed. R. Civ. P. 23(c)(2)(B) ("The notice must clearly and concisely state in plain, easily understood language ... (iii) the class claims, issues, or *defenses*.") (emphasis added).

For example, as to the alleged "conspiracy," there has been no judicial determination that any evidence of the allegations will be admissible, and if so, to what extent it will be admitted. More importantly, the alleged conspiracy is neither a recognized affirmative defense nor a viable counterclaim. Instead, if admissible, it could potentially be used to impeach credibility or address

9

an element of Plaintiffs' case, that Novartis was foreclosed from a substantial share in the relevant market. Defendant can indicate (as Plaintiffs' proposal does) that it denies the claims and intends to defend the matter. The basis for potential attacks on potential witnesses' credibility are not appropriate in class notice.

Moreover, Defendant's use of the term conspiracy is erroneous as a matter of law. Defendant alleges, in part, that Plaintiffs' counsel conspired to get large attorneys' fees. To be viable, a civil conspiracy claim must allege an agreement to commit an unlawful act or to commit a lawful act by unlawful means. *See Banco Popular N. America v. Gandi*, 184 N.J. 161, 178 (2005). Here, Plaintiffs' counsel fees are not an unlawful act and receiving such fees (should Plaintiffs succeed) through the lawsuit is not a prohibited means. In addition, permitting Defendant to insert such language would require the Court, in fairness, to permit Plaintiffs to respond that counsel fees will only be awarded if Plaintiffs' prevail in a legally viable case. Such point and counterpoint are inappropriate in class notice.

Before leaving the conspiracy issue, the Court notes that Defendant's arguments concerning its conspiracy theory are inaccurate. First, in reciting to decisions by the Special Discovery Master ("SDM"), the Magistrate Judge, and the Honorable John J. Tharp, Jr., U.S.D.J. of the Northern District of Illinois, Sanofi claims that both the SDM and the courts adopted certain positions. Def. Opp'n at 5-6. In reality, the SDM, the magistrate, and Judge Tharp merely recited Sanofi's position. Unfortunately, Sanofi then cited the recitation of its position as though it had actually been adopted by the SDM or the judges. For example, Sanofi argues that the SDM found that "Sanofi had presented evidence tending to show that 'it is Novartis, *not the named plaintiffs*, who are the real parties in interest in this case and the named plaintiffs are being used as a *'stalking horse'* by Novartis to prosecute this action[.]" *Id.* (emphases in the original). However, the SDM

10

made no such finding. Instead, in his introduction, the SDM merely stated Sanofi's position: "Sanofi claims it is Novartis, not the named plaintiffs, who are the real parties in interest in this case and that the named plaintiffs are being used as a 'stalking horse' by Novartis to prosecute this action." D.E. 229 at 1.

Second, and critically, the issue before the SDM, the magistrate, and Judge Tharp was limited to whether Sanofi could take discovery on its conspiracy theory. Of course, the standard for discovery is much more lenient than the standard for admissibility at trial. As to discovery, all Sanofi had to demonstrate was that the discovery sought was "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The SDM, the magistrate, and Judge Tharp merely ruled that Sanofi had met its modest burden of demonstrating relevancy for purposes of taking discovery. None ruled that such information was in fact relevant for purposes of trial, and indeed, none could so rule having no knowledge as to the information that would thereafter be produced in discovery. Perhaps Judge Tharp stated it best when he indicated that "[a]ny misuse of information obtained pursuant to this subpoena, *or determination concerning its ultimate relevance and admissibility, can be addressed to the trial court down the road*, in the specific context in which such issues may arise." Def. Opp'n, Ex. 5 at 6 (emphasis added).

In addition, Defendant stated as fact that which is actually argument and omitted factual information needed to understand the proper context of the asserted facts. For example, Defendant claims that Plaintiffs' counsel nefariously "backdated" a retainer with an expert in an effort to bring prior communications with the expert under the umbrella of privilege. *Id.* at 9. In fact, the retainer was dated January 6, 2012, signed January 11, 2012, and expressly made retroactive to September 1, 2011. DX 389. Another example can be found in Sanofi's assertion that "Novartis also engaged 'counsel (both internal and external) regarding options,' but was quickly informed

11

that any claim lacked merit." Def. Opp'n. at 7. Yet, a review of a document cited by Sanofi, DX408, quickly reveals that this was not counsel's position. Instead, the attorney simply indicated that a possible relevant question is "whether the foreclosure is so large that the entrant will likely lose money." Counsel also apparently observed that an analysis of Defendant's conduct in light of the relevant test in the Ninth Circuit for anticompetitive bundling was on point. Sanofi is free to argue any reasonable inferences to be drawn from the facts. However, Sanofi may not assert as fact that which is actually argument (stating that a document was "backdated" when it was instead made expressly retroactive) and it may not omit facts necessary for a complete and accurate understanding of its asserted evidence.

Defendant's proposed language is also unnecessary, in the context of class notice, for other reasons. Defendant asserts that the litigation is "baseless and unsubstantiated[.]" Whether Plaintiffs' claim is actually baseless and unsubstantiated, as a matter of law, will be determined at summary judgment or at trial in response to motion practice. In addition, the issue of whether Sanofi was discounting its prices is a contested factual dispute. Plaintiffs have submitted evidence that once Menveo was coming to market, Sanofi increased its vaccines prices. The "discount" offered by Sanofi, if customers complied with the bundling requirements, was simply a return to the pre-Menveo prices. As opposed to wading into the issue of whether the discount was actually a discount in the class notice, Plaintiffs' proposed language that Sanofi's actions benefitted class members in the "form of lower prices" captures Defendant's basic position in a neutral manner.

Overall, and as noted above, Plaintiffs' proposed language includes the essence of Sanofi's position and does so in a neutral manner. In fact, Sanofi has not argued that Plaintiffs' description is inaccurate or misleading. Instead, Defendant's position is merely that it prefers its

characterizations. However, for the foregoing reasons, the Court will approve Plaintiff's proposed language.

2. <u>Defendant's Counterclaim</u>

The next line of disagreement is whether references to Defendant's twice-dismissed counterclaim should be included in the Class Notice. In the short form notice, Plaintiffs propose the following under the Section "What are your options?":

> **Stay in the Class:** To stay in the Class, you do not have to do anything now. You will be bound by the Court's decisions and will lose any right to sue Sanofi over the antitrust claims in this case. You may register at www._____.com to be notified if any money is awarded, and ask about how to ask for a share.

Pl. Short Form at 2. Defendant's proposed notice adds the following to the section above:

> In addition, you may become subject to a Counterclaim that Sanofi seeks to assert. While that Counterclaim has been dismissed by the District Court, it remains subject to appeal. The effect of the Counterclaim on class members, should it be reinstated on appeal, is not yet known but may involve the imposition of liability on each class member.

Def. Short Form at 2.

Similarly, in the long form notice, under the Section titled "Your Legal Rights and Options in this Class Action Lawsuit," Plaintiffs propose the following language:

> By doing nothing, you keep the possibility of getting money or other benefits that may come from a trial or a settlement. But you give up any rights to sue Sanofi on your own about the same legal claims in this lawsuit. *See* Question 8.

Pl. Long Form at 2. Defendant suggests adding the following to the end of Plaintiffs' proposed text above:

> In addition, you may become subject to a Counterclaim that Sanofi seeks to assert. While that Counterclaim has been dismissed by the District Court, it remains subject to appeal. The effect of the Counterclaim on class members, should it be reinstated on appeal,

13

> is not yet known but may involve the imposition of liability on each class member.

Def. Long Form at 2.

Additionally, in Defendant's long form notice, it adds the following paragraph to the end of Section 2: "What is this lawsuit about?":

> In addition, Sanofi filed a Counterclaim against all individuals and entities who are part of Plaintiffs' Class. Sanofi claims that such class members have violated Section 1 of the Sherman Act by agreeing not to compete in the market for the purchase of relevant vaccines. The Counterclaim seeks treble damages, attorneys' fees, and other relief. On December 20, 2012, the Court dismissed Sanofi's Counterclaim, and on April 9, 2013, the Court ordered that any appeal must wait until after it enters judgment on the entire case. Accordingly, Sanofi has not yet had the opportunity to appeal the decision dismissing the Counterclaim; nor has there been any decision concerning the impact, if any, on class members who remain part of the case in the event that the decision dismissing the Counterclaim is reversed.

Def. Long Form at 4.

The language referencing Defendant's counterclaim will not be included in either the short or long form notice. To date, the counterclaim has been dismissed twice, once for procedural reasons and once on substantive grounds. D.E. 111, 135. *See Korrow*, 2015 WL 7720491, at *9 (refusing to include Defendant's dismissed counterclaims in the class notice). If the counterclaim is reinstated on appeal, it will be subject to discovery and additional motion practice at the trial level. At that point, the Court can order that amended notice be sent to the class if appropriate. *Cf. Gardner v. Gold Strike Stamp Co.*, Case No. C 250-68, 1970 WL 554 (D. Utah 1970).

3. The Appeals Process

The final category in contention involves language that relates to the appeals process of this action. Specifically, Plaintiffs propose the following language in their long form notice:

14

> Lawyers must prove the claims against Sanofi at trial. If money or benefits are obtained from Sanofi, you will be notified about how to ask for a share if you did not exclude yourself from the class.

Pl. Long Form at 2. Defendant proposes to amend the above-paragraph as follows:

> Lawyers must prove the claims against Sanofi at trial, and the determination by the trial courts is subject to appeal: no determination will be final until after the appeals process is complete. If money or benefits are obtained from Sanofi, you will be notified about how to ask for a share if you did not exclude yourself from the class.

Def. Long Form at 2. The Court Orders Plaintiffs to amend their notice to read:

> Lawyers must prove the claims against Sanofi at trial. **Any determination at the trial level is subject to appeal by either party.** If money or benefits are obtained from Sanofi, you will be notified about how to ask for a share if you did not exclude yourself from the class.

(emphasis added). The Court finds this sentence clearer and more concise than Defendant's proposed language. It provides the potential class members with information regarding the appeals process in a simple and understandable manner and expressly notes that either party has the right to appeal.

Similarly, on page four of Defendant's proposed long form notice, it states:

> The Court has not decided which side is correct. The lawyers for the Class will have to prove their claims at trial, and if they prevail, Sanofi will have the opportunity to appeal the trial court's decision; no determination will be final until after the appeals process is complete.

Def. Long Form at 4. The Court finds that the following more aptly describes the appeals process:

**"The lawyers for the Class will have to prove their claims at trial. Any determination at trial is subject to appeal by either party."** Again, not only is this language clearer and more concise, it correctly notes that either side may appeal an adverse finding.

15

The last section addressing the appeals process is "Section 13: How and when will the Court decide who is right?" Def. Long Form at 8. Here, Sanofi adds in the following sentence at the end of the Section: "Any determination by the trial court is subject to appeal: no determination will be final until after the appeals process is complete." *Id.* The Court amends the long form notice to state the following: **"As noted, either party has the right to appeal any decision made at the trial court level."**

Accordingly, subject to the addition of these three statements concerning the appeals process, the Court approves Plaintiffs' proposed Class Notice.

### C. End date and compelling class member information

Plaintiffs Motion additionally requests a modification of the Class Period to provide for a definitive end date of December 31, 2015. Pl. Br. at 1-2. Plaintiffs argue that their proposed end date "best balances the rights of absent [c]lass members to recover for Sanofi's unlawful conduct with the administrative feasibility of the notice campaign, helping to ensure that [c]lass members receive the best notice practicable under the circumstances as well as promote judicial efficiency and economy as the case proceeds." *Id.* at 21. In conjunction with this request, Plaintiffs ask "that the Court compel Sanofi to update its production of transactional data to allow Plaintiffs to provide direct notice to as many [c]lass members as possible." *Id.* at 2. Plaintiffs argue that this data would "help[] afford those who joined the [c]lass between November 2013 and December 2015 direct notice of the Court's certification order." *Id.* at 12.

Defendant agrees that the class should be given a definitive end date, however it argues that the end date should be December 31, 2013, when fact discovery closed. Def. Opp'n at 28. Defendant further argues that there was a shift in the market after December 31, 2013, and Plaintiffs cannot show that injury occurred after this date. *Id.* at 29. Therefore, Defendant asks

this Court to deny Plaintiffs' motion to limit the class period to December 2015, and their related motion to compel. *Id.* at 30.

The Court agrees that a definitive end date should be set. Defendant offers the end of discovery as an end date, while acknowledging that sometimes a class is given an end date as of the date of class certification. *Id.* at 28. Plaintiffs offer an end date based on administrative convenience. Pl. Br. at 21. The Court disagrees with both parties and finds that the end date should be December 31, 2014 for the reasons that follow. *Cf. Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998) ("Under Rule 23(c)(1), District Courts are required to reassess their class rulings as the case develops."); *In re Resource America Securities Litig.*, 202 F.R.D. 177, 186 (E.D. Pa. 2001) (setting a definitive end date and finding that district courts "retain the discretion to redefine the length of the class should that become necessary.").

Plaintiffs provide no authority for the proposition that the Court can set an end date based solely on concerns of administrative convenience. Plaintiffs' proposed end date appears entirely arbitrary. Defendants, on the other hand, fail to support their representations as to the alleged market shift after December 2013.

Here, GSK bought, among other things, Menveo from Novartis in January, 2015. Since Plaintiffs damages are based on Novartis being substantially foreclosed from the market, the entire analysis for Plaintiffs damages would change after the date Menveo was purchased by GSK. Plaintiffs have not raised any argument that the complained of conduct continued following the GSK purchase. This Court finds that the most reasonable end date is December 31, 2014, immediately before Menveo was sold. Thus, the modified Class definition reads:

> [a]ll persons or entities in the United States and its territories that purchase Menactra directly from defendant Sanofi Pasteur Inc. ("Sanofi") or any of its divisions, subsidiaries, predecessors or affiliates, such as VaxServe, Inc., during the period from March 1,

17

> 2010 through and including December 31, 2014 ("Class Period"), and excluding all governmental entities, Sanofi, Sanofi's divisions, subsidiaries, predecessors, and affiliates Kaiser Permanente and the Kaiser Foundation (collectively, "Kaiser"), and any purchases by entities buying Menactra pursuant to a publicly-negotiated price (i.e., governmental purchasers).

Since the Class end date will be December 31, 2014, the Court will compel Sanofi to provide transactional data of class members up to and including that date. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 468 (1989) (finding that the district court was correct to permit discovery of information of the potential class members in facilitating notice). Therefore, Plaintiffs' request to compel transactional data is granted up to December 31, 2014.

## 4. CONCLUSION

For the reasons set forth above and for good cause shown, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion. The Court **GRANTS** Plaintiffs' request for approval of the class notice dissemination plan and the proposed short and long forms of class notice pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), subject to the additional language concerning the appeals process referenced above. The Court **DENIES** Plaintiffs' proposed end date and sets forth an end date of December 31, 2014. The Court also **PARTIALLY GRANTS** Plaintiffs' request to compel production of updated class member information up to and including December 31, 2014. An appropriate form of order accompanies this opinion.

**Date:** October 11, 2016

**JOHN MICHAEL VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**